

U.S. Department of Justice

United States Attorney
Eastern District of New York

WK:SCJ
F. #2013R01203

271 Cadman Plaza East
Brooklyn, New York 11201

December 1, 2017

By Hand and ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Discala, et al.
               Criminal Docket No. 14-399 (ENV) (S-1)

Dear Judge Vitaliano:

      The government respectfully submits this letter to notify the Court of two potential attorney conflicts of interest.

      The first potential conflict involves Amy Walsh, Esq., who represents defendant Craig Josephberg. Ms. Walsh was present at meetings with the government where Mr. Josephberg made statements that the government may seek to introduce at trial and, therefore, Ms. Walsh could be a witness if a factual dispute arises as to what was said at these meetings.

      The second conflict involves Maranda Fritz, Esq., who currently represents defendant Michael Morris, a former Managing Director of Halcyon Cabot Partners, Ltd. ("Halcyon"), and previously represented Mr. Josephberg while he was employed at Halcyon. Ms. Fritz also represented two other former employees of Halcyon.

      The government respectfully requests that the Court appoint independent counsel to advise both defendants of the conflicts and their right to independent counsel, and then conduct a Curcio hearing on these issues with both defendants.

I.     Background

      A.  Ms. Walsh and Mr. Josephberg

      Mr. Josephberg retained Ms. Walsh after he was arrested in the instant case in July 2014. Shortly after he was arrested, Mr. Josephberg met with the government on three separate occasions, pursuant to proffer agreements. In addition, Mr. Josephberg met separately

with the SEC, and Mr. Josephberg's testimony was taken by the State of Connecticut Securities and Business Investments Division, Department of Banking, in December 2014. Ms. Walsh represented Mr. Josephberg at all of these meetings and at the Connecticut examination.

  B. Ms. Fritz, Halcyon and Halcyon Employees

  In July 2014, the government unsealed the indictment charging CodeSmart's chief executive officer, several stock brokers including Mr. Josephberg, corrupt investors and others, as part of the securities fraud scheme. United States v. Discala et. al., 14 CR 399 (ENV). The lead defendant, Abraxas Discala, operated OmniView Capital Advisors LLC ("OmniView"). The indictment alleges that OmniView, through the actions of Mr. Discala and his co-conspirators, turned CodeSmart into a publicly traded company and thereafter proceeded to fraudulently pump up the price of CodeSmart stock so that the co-conspirators could sell their shares of the company at inflated prices.

  Mr. Josephberg was employed at Halcyon and much of trading in CodeSmart stock took place through Halcyon accounts. Mr. Discala, OmniView and other individuals and entities associated with Mr. Discala, had accounts at Halcyon through which CodeSmart was traded. Records showed that Mr. Josephberg, Mr. Morris, another Halcyon Managing Director (the "Halcyon MD") and Mr. Morris's adult son – principals and employees of Halcyon – also traded in CodeSmart stock during the relevant time period.

  In addition to the government's criminal investigation, the U.S. Securities and Exchange Commission ("SEC") conducted their own civil investigation into the manipulation of CodeSmart shares. The SEC unsealed charges against certain individuals, including Mr. Discala and Mr. Josephberg, in July 2014. As part of their investigation, the SEC sent subpoenas for documents to Halcyon; Ms. Fritz, representing Halcyon, responded to those subpoenas. Subsequently, in early 2015, the SEC took the testimony of Mr. Morris, the Halcyon MD and Mr. Morris's son about, among other things, Mr. Josephberg, Mr. Discala, trading in CodeSmart stock in Halcyon client accounts and their own CodeSmart transactions. As they indicated in their testimony, Mr. Morris and his adult son each paid OmniView approximately $50,000 for free-trading shares of CodeSmart in connection with the reverse merger that made CodeSmart a public company, and Mr. Morris and his son split profits from their sales of CodeSmart stock. Mr. Morris and the Halcyon MD were present at meetings with Mr. Josephberg and Mr. Discala in or about August 2013, shortly before Mr. Morris and the Halcyon MD both purchased CodeSmart stock sold from accounts controlled by Mr. Discala. See Superseding Indictment ¶ 27. Ms. Fritz represented Mr. Morris, the Halcyon MD and Mr. Morris's son before the SEC.

  In or about June and July of 2015, as the investigation continued, the government raised potential Curcio issues involving Ms. Fritz's continued joint representation of multiple Halcyon employees. In addition, the government noted that Ms. Fritz handled the representation of Halcyon when a dispute arose between Halcyon and its clearing firm in the midst of (and because of) the trading of CodeSmart shares in August and September 2013. It appears that Ms. Fritz also represented Halcyon when Halcyon attempted to collect funds owed by Mr. Discala. In June and July 2015, when the government raised the above potential Curcio issues with regard to multiple Halcyon employees, additional potential conflicts involving Mr. Josephberg and Ms.

2

Fritz were not raised. Later, in November 2015, Mr. Morris was added as a defendant in this case and charged in the Superseding Indictment as a being a participant in the CodeSmart stock fraud scheme.

Mr. Josephberg was employed as a broker at Halcyon in or about and between November 2010 and October 2013. In March 2013 and July 2013, the Financial Industry Regulatory Authority ("FINRA") took Josephberg's testimony in connection to two separate matters involving Halcyon. Ms. Fritz represented Mr. Josephberg before FINRA. Mr. Josephberg's testimony did not pertain to CodeSmart or Mr. Discala but did relate, generally, to Mr. Josephberg's employment as a broker at Halcyon and potential improprieties involving other Halcyon clients. In his FINRA testimony, among other things, Mr. Josephberg described his background, prior arrests, prior disciplinary events, his supervision by Mr. Morris and the Halcyon MD, his compensation arrangements, and a past purported "trading error" that resulted in Mr. Josephberg owing Halcyon over $100,000.

II.     Applicable Law Regarding Conflict-Free Counsel

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998); see also Wood v. Georgia, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). Additionally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988).

When there is even the possibility of a conflict of interest, the trial court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An attorney has a potential conflict of interest "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." See United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citing Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980) (Marshall, J., concurring in part and dissenting in part)). By contrast, "[a]n attorney has an actual . . . conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (internal quotation marks omitted).

"In most cases when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice." United States v. Schwarz, 283 F.3d 76, 95 (2002). However, if the Court finds that a conflict exists, and that "the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation . . . the attorney must be disqualified, regardless of whether the defendant is willing to waive his right to conflict-free counsel." Schwarz, 283 F.3d at 95-96. Indeed, it may be an abuse of discretion and reversible error for the Court to accept a defendant's attempt to

3

waive the conflict. See Levy, 25 F.3d at 153; United States v. Fulton, 5 F.3d 605, 612-14 (2d Cir. 1993).

Thus, "[w]hen a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." Fulton, 5 F.3d at 612 (citations omitted). The district court enjoys broad latitude to decline a defendant's proffered waiver of conflicted counsel and to disqualify chosen counsel, and the appellate courts will review that decision only for abuse of discretion. See Wheat, 486 U.S. at 163; United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993); Fulton, 5 F.3d at 614.

Courts have found disqualifying conflicts where a defense attorney's (a) duty of loyalty impairs the attorney's ability to advance an effective defense on behalf of a client or (b) duty to uphold a client's confidences could be compromised by a duty to another client. See, e.g., Levy, 25 F.3d at 157-58 (defendant denied effective assistance where counsel had represented accomplice); United States ex rel. Stewart on Behalf of Tineo v. Kelly, 870 F.2d 854, 856 (2d Cir. 1989) (disqualification of defense counsel proper where counsel had represented a government witness on an unrelated matter, despite counsel's assertion that he did not have privileged information); United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986) (reversing conviction because of counsel's inability to cross-examine former client testifying against defendant at trial).

In Locascio, the Second Circuit noted that counsel's "multiple representation" or "prior representation of a witness or co-defendant" are "typical" situations in which a district court can properly find that disqualification is necessary. Locascio, 6 F.3d at 931 (citing Stewart, 870 F.2d at 856-57). Similarly, in United States v. Rogers, 9 F.3d 1025, 1031-33 (2d Cir. 1993), the Second Circuit held that the district court did not abuse its discretion in disqualifying counsel who had previously represented a government witness at a civil deposition arising out of the same facts. Indeed, the Court in Rogers held that the district court did not err in failing to address the defendant personally to determine whether he was prepared to waive the conflict, in light of the courts' "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession." Id. (quoting Wheat, 486 U.S. at 160).

The Second Circuit's holdings are premised on the principle that cross-examining a client presents the attorney with irreconcilable obligations. In a multiple representation situation, the attorney has an obligation to his defendant client, on the one hand, to examine his own witness client vigorously and without reservation. On the other hand, the attorney has an obligation to protect the confidences and interests of his witness client. Such a conflict is insoluble. See, e.g., United States. v. Malpiedi, 62 F.3d 465, 469-70 (2d Cir. 1995) (reversing conviction because defense attorney's prior representation of government witness in appearance before grand jury created a conflict of interest precluding attorney from representing defendant at trial).

However, if the conflicts are of a kind that a rational defendant could knowingly and intelligently desire the conflicted attorney's representation, the Court must obtain directly

from the witness a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153. In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
>
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
>
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-890.

### III. The Conflicts in the Present Case

#### A. Ms. Walsh and Mr. Josephberg

Mr. Josephberg made statements to the government that are protected by proffer agreements. The government would be permitted to introduce Mr. Josephberg's proffer statements at trial only to cross-examine Mr. Josephberg if he testifies or to rebut evidence offered on his behalf. In the event the government elects to use the Mr. Josephberg's proffer statements, the government would call as a witness a government agent who was present during the proffers. While this avoids having to call Ms. Walsh as a witness, it does not remove the possibility that, should the government's witness testify in a manner inconsistent with that of Ms. Walsh's recollection, Mr. Josephberg may wish to call Ms. Walsh as a witness on his own behalf, which would require that she be disqualified.[1] See Kliti, 156 F.3d at 156 (if defense counsel is called as a witness at trial, he must be disqualified as trial attorney).

In these circumstances, we submit that a Curcio hearing is required to explore this potential conflict of interest. This is true because in Kliti, the Second Circuit ordered a new trial in a case where the defense attorney was not permitted to testify and where no Curcio waiver was secured from the defendant. In that case, the Second Circuit found that the defense attorney was "in a clear conflict because he was faced with the choice of: (1) testifying on behalf of his client, which would result in his disqualification, or (2) not presenting evidence of the exculpatory statement." Kliti at 156.

---

[1] In addition, Mr. Josephberg made certain statements under oath to Connecticut regulators which are not protected by a proffer agreement and the government may seek to admit certain of those statements during the trial. Those statements, however, were transcribed by an independent court reporter and it seems unlikely that they would be the source of a factual dispute.

5

Accordingly, we request that the Court conduct a Curcio hearing to explore this potential conflict of interest with Mr. Josephberg. Mr. Josephberg should be afforded an opportunity to explore what, if any, testimony his attorney could offer on his behalf in response to the testimony of the government's witness. To that end, we submit that counsel should be appointed to advise the defendant with respect to these matters. See Curcio, 680 F.2d at 890.

### B. Ms. Fritz, Halcyon and Halcyon Employees

As noted above, another source of an attorney conflict arises from Ms. Fritz's current representation of Mr. Morris and prior representation of co-defendant Mr. Josephberg, as well as Ms. Fritz's prior representation of two other Halcyon employees: Mr. Morris's son and the Halcyon MD, both of whom worked closely with Mr. Morris and had involvement in CodeSmart transactions at Halcyon. To be clear, the government has no plans, at this time, to call any of these individuals as witnesses at trial, but that may change depending on a variety of factors, including the trial defenses asserted by Mr. Morris, Mr. Discala or Mr. Josephberg. In addition, it is possible that another party, including Mr. Josephberg or Mr. Discala, might seek to call the Halcyon MD or Mr. Morris's son as a defense witness. It is also possible that Mr. Josephberg or Mr. Discala may decide to enter a guilty plea prior to trial, but that appears increasingly unlikely.

While Ms. Fritz may argue that any representation of Mr. Josephberg in connection with his FINRA testimony was limited in scope and does not arise out of the same facts as this case, the FINRA testimony related to Mr. Josephberg's role at Halcyon and the supervision of his trading activities by Mr. Morris. In addition, the July 2013 FINRA testimony was taken during the time period in which Mr. Josephberg and Mr. Morris are alleged to have participated in the charged conspiracy. Accordingly, if the case proceeded to trial and Mr. Josephberg testified on his own behalf, Ms. Fritz may be in the awkward position of having to cross-examine a former client without violating an attorney-client privilege. See United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (holding that counsel's prior representation of co-defendant in unrelated criminal matter gave rise to potential conflict, but that defendant did not show any prejudice arising from conflict where co-defendant was never subject to cross-examination).

Even if Mr. Josephberg does not testify, Ms. Fritz still owes a continuing duty of loyalty to Mr. Josephberg. Therefore, it may be inappropriate for Ms. Fritz to raise certain arguments, either at trial or sentencing, that apportion blame away from Mr. Morris and on to Mr. Josephberg or otherwise favor Mr. Morris to Mr. Josephberg's detriment. See United States v. Yannotti, 358 F. Supp. 2d 289 (S.D.N.Y. 2004) ("Because an attorney's duties of loyalty and confidentiality to his clients remain in force after the termination of the attorney's retainer, the attorney cannot vigorously cross-examine the former client or question the client's credibility during summation without violating his obligations").

A lawyer may be disqualified where the former client makes a motion to disqualify, see United States v. DiTommasso, 817 F.2d 201, 219 (2d Cir. 1987), or joins the government's motion, see United States v. James, 708 F.2d 40, 41 (2d Cir. 1983). A former client may successfully move to disqualify counsel from representing a co-defendant where:

6

> (1) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues of the present law suit; and
>
> (2) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

DiTommaso, 817 F.2d 201, 219 (2d Cir. 1987) (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)). In DiTommaso, defendant Messina successfully moved to disqualify his co-defendant DiTommaso's attorney because of his prior representation of Messina in an unrelated criminal case. On appeal, the Second Circuit found that during his representation of Messina the attorney "was likely to have had access to privileged information potentially relevant to the present case." Id. at 220. The Court acknowledged the import of the Sixth Amendment, but held that it was reasonable for the district court to disqualify the attorney so as to avoid conferring an "unfair advantage on DiTommaso . . . or adversely affect[ing] Messina's interests." Id.

However, where the former client does not make such a motion and the current client agrees to have cross-examination of the former client limited to matters in the public record, then counsel may not necessarily need to be disqualified. See United States v. Cunningham, 672 F.2d 1064, 1073 (2d Cir. 1982). Therefore, assuming that Mr. Josephberg does not move to disqualify Ms. Fritz, a waiver by Mr. Morris (including an agreement that any possible cross-examination of Mr. Josephberg, should he testify, be limited to information in the public record) may obviate the need for disqualification, unless the "conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation." See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995); Levy, 25 F.3d 146 at 153.

Ms. Fritz also owes continuing duties to the Halcyon MD and Mr. Morris's son, both of whom she represented when they were questioned by the SEC about their knowledge of the facts alleged in this case relating to Mr. Discala and the CodeSmart transactions. Ms. Fritz's representation of Mr. Morris may be impaired if either the Halcyon MD or Mr. Morris's son testifies at trial and Ms. Fritz is asked to cross-examine either individual.

Finally, given that Ms. Fritz was involved in resolving disputes on behalf of Halcyon specifically associated with Mr. Discala and the trading of CodeSmart shares, she herself may be a witness to certain events in question although the government has no basis to

believe she was a witness to any illegal activity.[2] The government does not envision Ms. Fritz being a witness, but that does not preclude another party from calling Ms. Fritz to testify.[3]

### IV. Curcio Hearing

For the reasons described above, the government therefore requests that the Court conduct a Curcio hearing with both Mr. Josephberg and Mr. Morris to explore the conflicts that their current representation causes or may cause.

Mr. Josephberg and Mr. Morris may make an informed waiver pursuant to the following procedures: (1) the court advises each defendant of his right to representation by an attorney who has no conflict of interest, (2) the court instructs each defendant as to the dangers arising from the particular conflicts at issue for each defendant, (3) permits each defendant to confer with his chosen counsel, (4) encourages each defendant to seek advice from independent counsel, (5) allows a reasonable time for each defendant to make a decision, and (6) determines whether each defendant understands the risks of representation by his present counsel and freely chooses to run them. United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003); United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).

The government also requests that the Court inquire as to whether Mr. Josephberg wishes to move to disqualify Ms. Fritz as Mr. Morris's counsel due to Ms. Fritz's prior representation of Mr. Josephberg, and, if so, determine whether disqualification is merited here.

Should the Court accept the waivers of the potential conflict-of-interest by the defendants and not disqualify either Ms. Fritz or Ms. Walsh, the government respectfully requests that both attorneys be directed to conduct any cross-examination of witnesses in such a way as to avoid becoming an unsworn witness at trial -- i.e., to refrain from identifying herself as the attorney who participated in any meeting or conversation that is the subject of testimony during the trial. See Kliti at 156, n.7; Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir. 1995) ("Standing alone, becoming an unsworn witness is a basis for disqualification of an attorney"); United States v. Jones, 900 F.2d 512, 520 (2d Cir. 1990). Should either attorney do otherwise, she would create another reason for disqualification.

---

[2] Mr. Morris has never suggested that he intends to assert an advice of counsel affirmative defense, but, if he does, that would trigger a partial waiver of the attorney-client privilege between himself and Ms. Fritz, under such circumstances, Ms. Fritz would be a witness and unable to represent Mr. Morris.

[3] Ms. Fritz was also present when the SEC took Mr. Morris's testimony. As this testimony was transcribed by a court reporter, it seems unlikely that those statements would be the source of a factual dispute which would require Mr. Morris to call Ms. Fritz as a witness on his own behalf at trial and thereby cause her disqualification. See Kliti, 156 F.3d at 156.

8

V.  Conclusion

For the reasons set forth above, the government requests that the Court conduct a Curcio inquiry. Prior to such a hearing, the government respectfully requests that the Court appoint Curcio counsel to advise Mr. Morris and Mr. Josephberg concerning the conflicts and their right to independent counsel.

                                        Respectfully submitted,

                                        BRIDGET M. ROHDE
                                        Acting United States Attorney

By:       /s/
                                        Shannon C. Jones
                                        Patrick Hein
                                        Mark E. Bini
                                        Assistant U.S. Attorneys
                                        (718) 254-6379 (Jones)

cc: All counsel (by ECF)