UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- x
UNITED STATES OF AMERICA,              :
                                       :
                                       :
                -against-              : 14 CR 399 (ENV)
                                       :
ABRAXAS DISCALA, et al.,               :
                                       :
                Defendants.            :
                                       :
---------------------------------------- x

# DEFENDANT ABRAXAS DISCALA's RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE AS DIRECT EVIDENCE OR, IN THE ALTERNATIVE, PURSUANT TO RULE 404(B)

CHARLES A. ROSS & ASSOCIATES LLC
111 Broadway, Suite 1401
New York, NY 10006

*Attorneys for Defendant*
*Abraxas Discala*

## PRELIMINARY STATEMENT

Defendant Abraxas J. Discala respectfully submits this Memorandum of Law in opposition to the government's motion to admit certain evidence as direct evidence or pursuant to Fed. R. Evid. 404(b).

Mr. Discala hereby joins Kyleen Cane's motion in her arguments that: (1) evidence of inchoate and unrelated "contemporaneous deals involving Discala, Cane, and Josephberg" is irrelevant and prejudicial (*see* Gov't Brief, pp. 11-13; Cane Brief, pp. 4-11); and (2) evidence of Cane's trading history involving uncharged, unrelated, and materially different securities transactions is irrelevant and prejudicial. *See* Gov't Brief, pp. 13-19; Cane Brief, pp. 11-17.

In addition, Mr. Discala objects to admission of evidence concerning the 2010 Regenicin deal. *See* Government Brief, pp. 9-11. The government raises a wide range of information related to Regenicin. Allowing such testimony and documentation into evidence will only give rise to an irrelevant mini-trial. Further, that information is offered as impermissible propensity evidence and does not fit within any of the permissible 404(b) considerations.

Further, Mr. Discala maintains that any evidence about supposedly illegal gambling or purported debts arising from it is not relevant to any issues in this case. Any remote probative value such information might have would be far outweighed by the prejudice and distraction it would cause.

Finally, Mr. Discala joins the contemplated argument by Michael Morris ███████ ████████████████████████████████████████████████████████ ██████████████████████████.

Therefore, the government's purported use of this irrelevant evidence should be rejected.

## LEGAL STANDARD

Rule 403 of the Federal Rules of Evidence provides that a court may exclude relevant evidence if its probative value is substantially outweighed by any danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The government starts with the proposition that some of the evidence is not 404(b) evidence at all but rather direct evidence of uncharged conduct. Instead, the government proclaims that evidence of transactions involving different companies, with different corporate structures, different investors, over different time periods, "arose out of the same transaction or series of transactions as the charged offense." Gov't Brief, p. 6.

Further, Rule 404(b)(1) of the Federal Rules of Evidence prohibits the government from offering evidence that a defendant's character demonstrates a propensity to commit crimes. Fed. R. Evid. 404(b)(1). Evidence of prior bad acts *may,* however, be admitted to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. E. 404(b)(2).

The Second Circuit has explained its process for reviewing a District Court's decision to admit evidence of prior bad acts:

> "When reviewing evidence admitted pursuant to Rule 404(b), we consider whether: "(1) the prior crimes evidence was 'offered for a proper purpose'; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009);

See Gov't Brief, p. 7.

The government's proposed evidence cannot meet these standards and therefore it motion must be denied.

2

## ARGUMENT

### THE BROAD EVIDENCE THE GOVERNMENT SEEKS TO INTRODUCE REGARDING REGENICIN WILL REQUIRE A MINI-TRIAL CONCERNING UNCHARGED CONDUCT LACKING IN PROBATIVE VALUE UNDER 404(B) THAT IS UNFAIRLY PREJUDICIAL UNDER FEDERAL RULE OF EVIDENCE 403

The proposed evidence of the Regenicin transaction is not admissible as direct evidence of uncharged conduct and because it is improper propensity evidence under Rule 404(b).

### A. Evidence Of The Regenicin Transactions Lacks Probative Value Under Rule 403

The government seeks to introduce evidence of a 2010 business transaction concerning a company called Regenicin. Gov't Brief, pp. 9-11. Although this is uncharged conduct, the government seems to think that the Regenicin restructuring transaction, even though legal, is somehow inextricably intertwined with the charged conduct and necessary to complete the government's trial story. More specifically, the government thinks that evidence about the Regenicin transaction demonstrates a background – or even the development of possible criminal – relationship between Discala and Cane, Govt' Brief, p. 8, and that "Discala relied on and trusted Cane" prior to 2014. Gov't Brief, pp. 10-11. Mr. Discala does not object to the introduction of evidence showing Mr. Discala and Ms. Cane knew each other and worked together in the past in an attorney client relationship.

However, the government seeks to go beyond that simple fact and seeks to traduce all aspects of the "RGIN deal," though legal, by offering evidence that (1) Discala raised money for Regenicin; (2) Discala introduced Cane to Regenicin's founders; (3) Regenicin's founders hired Cane; (4) "Windstar, Inc., a shell public company incorporated in 2007 with no assets or cash as of September 2009, acquired Regenicin's assets" and changed its name to Regenicin; (5) Windstar replaced its CEO with Regenicin's CEO; (6) Cane prepared the SEC filings, private

3

placement documents, and received investor money in the Cane Clark bank account on behalf of Regenicin; (7) companies controlled by Discala sent money directly to Regenicin and the Cane Clark bank account; (8) Cane and Discala exchanged texts about Regenicin; (9) Discala arranged for certain individuals to invest in Regenicin who also invested in CodeSmart and/or Cubed; and (10) both Cane and Discala received Regenicin stock and still owned some Regenicin stock as of early 2014, when Cane was hired to represent Cubed. Gov't Memo pp. 9-10. The government alleges that this information is supported by SEC filings, bank records, and "other documents." Id.

The government is not attempting to offer this additional evidence for the sole purpose of demonstrating a previous business relationship. Rather, it is obvious that the government hopes to use this other evidence of uncharged conduct to help convict Discala on the charged conduct by prejudicing the jury by implying that a perfectly legal Regenicin corporate restructuring is somehow another alleged fraudulent scheme, though uncharged conduct. A prime example of the government's ulterior motive can readily be seen in its compound statement that "Windstar, Inc., a shell public company incorporated in 2007 with no assets or cash as of September 2009, acquired Regenicin's assets, replaced Windstar's CEO with Regenicin's CEO, and changed Windstar's name to Regenicin." Gov't Memo p. 9. The government fails to demonstrate how such an assertion has any probative value to the charged conduct. Indeed, the actions of Windstar and Regenicin have no relation with Discala and Cane's business background beyond their attorney client relationship.

The government cites *United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) in support of its proposed evidence. In *Carboni*, the defendant was charged with knowingly making false statements to secure advances on a line of credit in violation of 18 U.S.C. §1014. The

4

government introduced evidence of defendant's added fictional inventory to a company's list of inventory. The Second Circuit held that: (1) the changes in a company's inventory "were inextricably intertwined with the charged conduct and thus not subject to Rule 404(b)"; (2) the jury reasonably could have concluded that the defendant altered the inventory to create an overly optimistic picture of the company's finances; and (3) the evidence rebutted defendant's contention that he acted in good faith when he caused false borrowing certificates to be submitted." *Carboni* 204 F.3d at 44. In contrast, none of the proposed evidence in this case is analogous to the situation in *Carboni*. There has been no evidence that anyone – Discala or Cane - altered any information in Cubed's financial statements. As stated in the Declaration of Mr. Engstrom, attached to Discala's motion to suppress, the valuation of Cubed was legitimate and even low. See Declaration of Eric Engstrom, ¶¶ 10-19. Therefore, the government's proposed evidence has little probative value to the crimes charged in the Superseding Indictment and must be seen for what is intended by the government by its use: misleading and confusing the jury to prejudice them against Discala. The risk of conviction based on such purported propensity evidence is simply too high. *See* Fed.Rule Evid. 403.

The "legal doctrine" of inextricable intertwinement under *Carboni* is just too broad a standard. Virtually anything could be swept up by that test. It only requires a little imagination. It has been criticized in other circuits. *See e.g., United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010)(Third Circuit has renounced the "inextricably intertwined" standard, finding it "vague, overbroad, and prone to abuse . . . ." ); *United States v. Taylor*, 522 F.3d 731, 734 (7th Cir. 2008) (The Seventh Circuit has noted that although many cases recite the "intricately related" formula, the doctrine is "unhelpfully vague"), *cert. denied*, 129 S. Ct. 190, 172 L. Ed. 2d 135 (2008). Leading commentators on the rules of evidence also have criticized it as too elastic, vacuous, and

5

jargon. For example, Professors Mueller and Kirkpatrick argue that [the inextricably intertwined standard] "has proved elastic and invites abuse." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:33 (3d ed. 2003). Others note that it "substitutes a careful analysis with boilerplate jargon," Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 404.02[12] (9th ed.), and "invites sloppy, non-analytical decision-making," David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events* § 5.2 at 327 (2009). Even Professor Imwinkelried, who reluctantly defends the test based on precedent, concedes that the "vacuous nature of [its] wording gives courts license to employ sloppy analysis and allows them quickly to slip from a conclusory analysis to a desired conclusion." Edward J. Imwinkelried, *The Second Coming of Res Gestae*, 59 Cath. U. L. Rev. 719, 729-30 (2010). Discala contends it is too vague to admit of clear application. The government's permissible evidentiary net cannot be slung that far.

There is no intertwinement here. The Regenicin "deal" was not part of any single ongoing offense. In fact, it was a separate and different company, with different officers, different investors, and in a past time period. Had the government believed it was part of the conspiracy, the government would have charged it. They did not. Indeed, the cases cited by the government admitted the evidence only as part of a "single offense." See e.g., *U.S. v. Towne* 870 F.2d 880 (2d Cir. 1989) (district court did not err in allowing evidence that defendant possessed subject weapon on days other than the date charged; possession over several days constituted single offense, not a series of offenses and was not 404(b) material).

In addition, not only does it lack probative value, but allowing its introduction of purported substantive evidence of guilt also will be a waste of time and create the need for unnecessary "mini-trials." The sheer volume of the government's proffered evidence creates

significant issues at trial. In order to explain the voluminous financial documents, text messages, and SEC filings, Mr. Discala will need to offer his own evidence demonstrating that the Regenicin deal was legal and walk the jury through the entire corporate restructuring process. This will create an unnecessary and time-consuming "mini-trial" on the Regenicin deal, all for the supposed purpose of helping understand the government's trial story. The government can tell its story without it.

The government argues that evidence regarding the background relationship between Discala and Cane is direct evidence of the charged offense. Specifically, the government claims that the prior relationship is evidence of Discala's "trust" and "reliance" in Cane. *See* Gov't Memo pp. 10-11. Just because someone trusts another is not evidence of a developing criminal relationship. Moreover, the specific details and inner workings of a past business transaction go far beyond what is needed to show "trust" and "reliance" between Discala and Cane. The nature and level of Discala's "trust" in Cane is simple: their attorney-client relationship. The government already intends to introduce evidence that "Discala often referred to Cane as 'GP' for 'Guardian Princess,'" whatever that is supposed to imply, and that "he trusted Cane would hold the unrestricted stock in Cubed in an 'escrow' for the benefit of Discala and others," Gov't Brief, p. 10, a permissible legal device she constructed. Discala trusted Cane because of that relationship, as well as her status as a respected member of the bar. Thus, ample evidence of "trust" between Discala and Cane already exists by virtue of their attorney client relationship. Nothing more is needed.

The government's proposed evidence will only serve to confuse the issues, mislead the jury, cause undue delay, waste time, and needlessly present cumulative evidence and therefore should not be admitted. *See* Fed. R. E. 403. *See also, P. Rothstein, Federal Rules of Evidence,*

7

*pp. 151-532 (3rd Edition 2013)* ("Rule 403 can be used to render evidence *inadmissible* even though it looks clearly admissible and is directly relevant to one of the permissible purposes under Rule 404(b)."). The prejudicial effect of the government's proffered evidence of the 2010 Regenicin deal substantially outweighs any possible probative value under Rule 403. The government's motion should be denied.

**B.   The Governments' Propensity Evidence is Not Admissible Under Rule 404(b)**

Nor can the government's proposed evidence be admitted because it is propensity evidence under Rule 404(b). The government cannot point to any proper purpose for its use. Indeed, background information on Discala and Cane does not tend to prove motive, opportunity, intent, preparation, plan, knowledge, or identity, as allowed by Rule 404(b)(2). Rather, it is the very kind of improper propensity or "character" type evidence that is excluded under Rule 404(b)(1).

Discala's involvement in the prior Regenicin "deal" with Cane in her role as lawyer does not suggest motive, intent, or knowledge of any future dealings with Cane that are charged in the Superseding Indictment. Nor does it show that Discala or Cane had "plans" or made "preparation" for the conduct charged regarding the four other companies listed in that indictment.

The government believes that evidence of the Discala/Cane relationship will explain how their supposed criminal relationship developed, which then led to a relationship of mutual trust as co-conspirators. Gov't Brief, at 8. The government relies on such authorities as *United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996). There, the challenged evidence consisted of testimony by two of defendant's co-conspirators who cooperated with the government. The proffered evidence of other crimes tended to show the defendant's involvement in the other illegal activities with his

8

co-conspirators: making various loans and collecting debts, committing crimes including armed robberies and a burglary, and using and selling stolen and counterfeit credit cards. When defendant and his co-conspirators first met, the defendant agreed to loan his co-conspirator money to cover a debt to a drug dealer. Shortly thereafter, a co-conspirator gave the defendant "tips" about potential robbery or burglary targets, and the defendant, acting on a tip, arranged a burglary. The co-conspirator also claimed that he and the defendant attempted to rob a drug dealer and burglarize a house, all to no avail, but that the co-conspirator "earned some respect" from the defendant when he finally located the dealer's cache. The government argued that such evidence was relevant because it helped explain the background of the conspiracy and the development of the relationships between defendant and the other co-conspirators. The district court admitted the evidence. *Id.* at 565. The Second Circuit upheld the trial court, stating that "[o]ur inclusionary interpretation of the rule allows evidence of other wrongs to be admitted so long as it is relevant and it is not offered to prove criminal propensity." *Id.* at 565.

In stark contrast to such cases as *Pipola*, where the defendant and his co-conspirators engaged in unlawful from the outset, there was not such unlawful activity here. The Regenicin transaction was lawful. The government cannot – and does not – claim otherwise. Indeed, to suggest otherwise would mean that a prior relationship with an attorney is evidence of motive, intent, opportunity, plan, or preparation for unlawful conduct.

Even if such evidence were to fit within one of the categories listed in 404(b), the evidence must still go through the balancing test under Rule 403. *Rothstein, supra*, p. 131. Indeed, as the Second Circuit explained in *Pipola*, "[w]hen the government seeks to introduce such extrinsic evidence, the trial court must first determine whether it is admissible under Rule 404(b). If so, it must then determine whether the probative value of the evidence is substantially

9

outweighed by the risk of unfair prejudice. *See* Fed.R.Evid. 403. 83 F.3d at 566.

Discala submits that the government's proposed evidence does not qualify under 404(b) and cannot survive the balancing test under Rule 403.

## THE GOVERNMENT SEEKS TO INTRODUCE EVIDENCE OBTAINED BY WAY OF AN IMPROPER SEARCH WARRANT

The government claims that "in or about and between 2010 and 2012, Discala raised investor money for…Regenicin, Inc.," and "[b]ank records and other documents show that companies controlled by Discala sent money directly to Regenicin and to the Cane Clark bank account beginning in September 2010." Gov't Brief, p. 9. These statements highlight a significant issue that remains pending before the Court - specifically, the seizure and retention of documents plainly outside the scope of the OmniView Search Warrant. This issue goes directly to the over-breadth argument at pages 34 to 41 of Mr. Discala's Motion to Suppress. Docket No. 353.[1]

The FBI executed a warrant at the OmniView office on July 17, 2014. That warrant limited the government to documents created <u>after</u> February 2012. *See* Discala Motion to Suppress, Docket No. 353, p. 21. In seizing computer hard drives, the government collected a vast amount of documents and data outside the timeframe mandated by the warrant.[2]

---

[1] It further goes to the need for a full and thorough hearing on the issue of trading records, trading data and Blue Sheets. The pattern of mishandling of information and ever-changing data in this case has risen to a level that cannot be ignored. The government's failure to delete pre-Februrary 2012 and its thoughtless distribution of those records to Mr. Discla's co-defendants is clear proof that the government's retention and handling of the OmniView Search was far outside the bounds of the Fourth Amendment.

[2] It is clear that the government has retained documents that are plainly outside the scope of the OmniView Warrant for more than three years. On May 11, 2016, the government produced a hard drive, containing 790 gigabytes of data. The government represented that the May 11, 2016 production constituted all pre-February 2012 documents and data seized from

10

In its Rule 404(b) motion, much of what the government relies on pre-dates February 2012. The government now seeks to admit evidence from 2010 and 2011 concerning the Regenicin deal. Gov't Brief, p. 9-10. The government should not be permitted to offer any evidence created prior to February 2012 that was seized from the OmniView office. Not only does such usage by the government raise concerns about the possible improprieties of the government's handling of this evidence, it should not – and cannot - be admitted into evidence since it has virtually no possible relevancy and no probative value under Federal Rules of Evidence Rules 403 and 404(b).

## EVIDENCE OF INCHOATE, CONTEMPORANEOUS DEALS INVOLVING DISCALA, CANE, AND JOSEPHBERG SHOULD NOT BE PRESENTED TO THE JURY

Mr. Discala joins in Ms. Cane's opposition to the entry of evidence concerning so-called "Company A" and "Company B". Cane Brief pp. 6-11. The government "seeks to introduce evidence, including documentary evidence, witness testimony and recorded calls" in order to prove its accusations about these uncharged and unrelated transactions. Gov't Brief, p. 12. As with evidence related to Regenicin, the government's proffered evidence will only create a

---

OmniView, and the government represented that the documents on that hard drive would be "excluded from the government's review, deleted from [the government's] database, and not produced to the co-defendants." May 11, 2016 letter, attached as "Exhibit A." On May 12, 2016, the government produced a hard drive containing "approximately 556,444 documents" to all counsel in this case. *See* May 12, 2016 letter, attached as "Exhibit B." On May 20, 2016, the government produced an additional 616,000 documents to all counsel in this case. The government represented that those documents constituted what was seized from the OmniView office with all pre-February 2012 documents removed. *See* May 20, 2016 letter, attached as "Exhibit C"; June 24, 2016 Tr., p. 5, attached as "Exhibit D"(Ms. Jones: It ended up being 1.2 terabytes of data that we made available a little over a month ago…We were able to reduce it, I think originally we thought it would be over two terabytes, but *we applied a date range restriction,* and now we are at 1.2 terabytes, which is a little bit over a million documents.") In preparing for trial, our data analysis team only yesterday learned that the government's representation is not true. Of the approximately 1,172,444 May 12 and May 20 documents produced to all counsel and retained by the government, it appears that approximately 992,000,000 documents, or 85% them, were created outside February 2012 to July 2014 date range. Indeed, some of this data appears to originate from as far back as 2000.

11

confusing, cumulative, and prejudicial mini-trial. *See* Cane Brief, pp. 6-11. As further argued by Ms. Cane, evidence concerning Company A and Company B is not probative of the parties' intentions under Rule 404(b) in the prior Cubed transaction. Cane Brief, pp. 9-10.

Evidence of nascent, unrelated "deals," has no bearing on the issues the jury should be asked to consider as it deliberates on what took place with CodeSmart, Cubed, StarStream, and Staffing Group. The government attempt to use the instant motion as a "back door" maneuver to introduce evidence regarding two unrelated companies should not be permitted. If the government truly discovered criminal conduct, it would have named Company A and Company B in this case. But permitting the introduction of evidence related to Company A and Company B, opens the door to the introduction of evidence of Discala's other business dealings based only on the government's general claim that Discala performed similar transactions in the past. Ironically, the government seeks admission of evidence relating to other business deals, while charging Discala with securities fraud as to only four separate companies named in the Superseding Indictment. The introduction of evidence related to two additional companies is simply overkill. Thus, the government's attempt to proffer confusing and irrelevant propensity evidence should be denied. *See* Cane Brief pp. 6-11.

For the same reasons, while there is no allegation Mr. Discala played any part in any conduct concerning Crown Alliance Capital, Mr. Discala joins Ms. Cane's opposition to the government's argument at pages 14-20 of its motion. *See* Cane Brief pp. 11-17.

Further, given the current *Curcio* issue pending before the Court, Michael Morris' position regarding █████████████████████████████████ Gov't Brief, p. 20-21. Nevertheless, Mr. Discala joins in Mr. Morris' anticipated opposition to admission of evidence that ███████████████████████████████████

12



## EVIDENCE THAT MR. DISCALA ALLEGEDLY HAD A DISAGREEMENT WITH A SUPPOSED CO-CONSPIRATOR CONCERNING A GAMBLING DEBT IS IRRELEVANT AND PREJUDICIAL

The government seeks to offer testimony from "multiple…witnesses" that Mr. Discala "engaged in illegal gambling," Gov't Brief, p. 27, though the government offers no rationale for most of this proposed evidence. *Id.* p. 27-28. Discala submits that the government's proposed evidence is completely irrelevant, highly prejudicial, and creates an unnecessary and time consuming factual dispute.

As part of this drama, the government seeks to introduce evidence that Mr. Discala "stiffed" a co-conspirator in the alleged Cubed scheme out of a $6,500 gambling debt. The government argues that this information will explain "in part" a breakdown in the relationship between this proposed witness and Mr. Discala. Gov't Brief, p. 27-28. Chasing this will-o-wisp proposition at trial would be a waste of time. The government has not offered any explanation for how the breakdown in the personal relationship between Mr. Discala and this alleged co-conspirator is relevant. Further, the government does not argue that this evidence is admissible under Fed. R. E. 404(b). Nor can it. If permitted, it could only be used to suggest poor character on the part of Mr. Discala, the very kind of character evidence Rule 404(b) is designed to exclude. It carries none of the traits of character that are permitted: motive, opportunity, intent,

13

preparation, plan, knowledge or identity. Indeed, the government fails to present any correlation between gambling and the commission of securities fraud or wire fraud. Such evidence amounts to improper propensity evidence that is highly prejudicial and irrelevant to this case.

The government's motion should be denied.

Dated: December 22, 2017                              Respectfully Submitted,


                                                     /s/ TV Sjoblom
                                                     Thomas V. Sjoblom
                                                     Counsel to Defendant Discala


                                                     /s/ Charles Ross
                                                     Charles Ross
                                                     Counsel to Defendant Discala


                                                     /s/ Andrew Bowman
                                                     Andrew Bowman
                                                     Counsel to Defendant Discala