FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  DEC 2 8 2017  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

UNITED STATES OF AMERICA,

               -against-

ABRAXAS J. DISCALA,
      Also known as "AJ DiScala,"
MARC WEXLER, IRA SHAPIRO,
MATTHEW BELL,
CRAIG JOSEPHBERG,
      Also known as "Jobo,"
KYLEEN CANE, DARREN GOODRICH,
DARREN OFSINK, VICTOR AZRAK, and
MICHAEL MORRIS,

                        Defendants.

------------------------------------------------------------ X

**MEMORANDUM & ORDER**

14-cr-399 (ENV)

VITALIANO, D.J.

      Prompted by a late and unusual confluence of events, the government seeks a hearing

pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), regarding perceived potential

conflicts in the continued representation of defendant Morris by his attorney of record while

defendant Josephberg moves to disqualify that same attorney of record for defendant Morris.

For the reasons that follow, defendant Josephberg's motion to disqualify the attorney of record

for defendant Morris is granted, and the government's request for a *Curcio* hearing is denied as

academic.

**Background**

      Michael Morris and Craig "Jobo" Josephberg were charged with a number of securities-

1

related crimes in a superseding indictment filed on November 2, 2015.[1] *See* ECF Dkt. No. 166

(Superseding Indictment).  As relevant to this memorandum and order, Morris was a managing

director of Halcyon Cabot Partners, Ltd., and Josephberg was previously employed at Halcyon.

Attorney Amy Lynn Walsh has represented Josephberg since July 29, 2014, *see* ECF Dkt. No. 32

(appearance entered by Amy Lynn Walsh), and Attorney Maranda Fritz has represented Morris

since November 4, 2015, *see* ECF Dkt. No. 176 (appearance entered by Maranda E. Fritz).  On

December 1, 2017, two years and 26 days after Attorney Fritz first appeared, the government

filed a letter motion notifying the Court and all defense counsel of a potential attorney conflict of

interest - Attorney Fritz had, apparently, previously represented Josephberg in connection with

his work at Halcyon, and apparently represented government Witness A as well.  *See* ECF Dkt.

No. 385 (Dec. 1, 2017 government letter motion). The government requested that the Court

schedule a *Curcio* hearing to deal with any real or potential conflicts.[2]

On December 7, 2017, Attorney Walsh filed a letter that the Court construed as a motion

---

[1] Eight other defendants were named in the indictment. Six have pled guilty.  Abraxas "AJ" DiScala and Kyleen Cane await trial but are peripheral parties to these motions.

[2] The Court notes at the outset that, presumably, the government, Josephberg, and Attorney Fritz herself were all aware of the potential conflict that Attorney Fritz's representation of Morris could present, but until the government's letter on the eve of trial no party had brought this matter to the Court's attention.  The Court, however, credits Attorney Walsh's assertion that "[t]he factual basis for this motion did not become clear until the government turned over the FINRA testimony to Mr. Josephberg's counsel on December 4, 2017." ECF Dkt. No. 411 at 8, 8 n.3.

to disqualify Attorney Fritz, on the grounds that she owes Josephberg a continuing duty of loyalty – one that Josephberg was not willing to waive. *See* ECF Dkt. No. 397 (Dec. 7, 2017 Josephberg letter motion). The next day, at a scheduled status conference and oral argument on previously filed and briefed motions, the Court ordered briefing on the issue of Attorney Fritz's alleged conflict of interest. That briefing is now complete.

Relevant Principles of Law

Under the Sixth Amendment, a defendant in a criminal case is entitled to the assistance of competent counsel, *see Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), and there is a "presumption in favor of counsel of choice." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). At the same time, federal courts have an independent interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698. Interwoven in these understandings is the tenet that attorneys owe ethical duties to current *and* former clients. *See, e.g., United States v. Perrone*, 2007 WL 1575248, at *8 (S.D.N.Y. May 29, 2007).

In practical terms, when a court is made aware that an attorney may have a conflict of interest, it must follow the two-step analytical framework described in *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). First, there is an obligation to inquire and "investigate the fact and details of the attorney's interests to determine whether the attorney in fact suffers from an actual

3

conflict, potential conflict, or no genuine conflict at all." *Id.* An actual conflict "exists when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (citation omitted).

If a court determines that there is an actual or potential conflict, it moves to the second step, which requires consideration of whether the conflict is automatically disqualifying or waivable. *Levy*, 25 F.3d at 153. The Second Circuit has clarified that there is a "very narrow category of cases in which we have held attorney conflicts to be unwaivable." *United States v. Perez*, 325 F.3d 115, 126 (2d Cir. 2003), which are not at issue here. As this Court noted recently, *Perez* did not exhaust the field, and "[b]eyond the 'always' category, there is a 'sometimes' category" of unwaivable conflicts. *United States v. Vertuccio*, 2017 WL 6513676, at *3 (E.D.N.Y. Dec. 19, 2017). Other kinds of conflicts are generally waivable, provided that there is a knowing and intelligent waiver by a defendant. *Curcio*, 680 F.2d at 888-890.

Another consideration is a trial court's independent responsibility "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698. *Wheat* makes clear that trial courts retain discretion to disqualify counsel even where the law does not absolutely require it – discretion to entertain those situations that fall into the "sometimes" category.

Additionally, disqualification need not be on the basis of a conflict with the interests of her client, but because of the duty of loyalty owed to a former client, which is fundamental to the attorney-client relationship. This duty of loyalty is at the heart of the law, and it is not extinguished by the end of representation – it is important enough a former client may make a motion to disqualify an attorney representing a co-defendant, and upon a sufficient showing, have that attorney disqualified. However, the Second Circuit has made clear that the moving party must meet a high burden. This is because courts "must be solicitous of a client's right freely to choose his counsel [, because such] motions are often interposed for tactical reasons, and . . . inevitably cause delay." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983) (internal quotations and citations omitted).

Given the substantial rights involved and the high burden they precipitate, a party moving to disqualify counsel for another party must show that, first, he was previously represented by the subject attorney; second, that there is a "substantial relationship between the subject matter" of the attorney's prior representation of him and the issues in the current litigation; and third, that the attorney he seeks to disqualify either had access to or was likely to have access to "relevant privileged information" while representing him. *See United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016). A matter is substantially related to an earlier representation if, first, "the current matter involves the work the lawyer performed for the former client; or, [second], there is substantial risk that representation of the present client will involve the use of

information acquired in the course of representing the former client, unless that information has become generally known." *United States v. Pizzonia*, 415 F. Supp. 2d 168, 178 (E.D.N.Y. 2006). As noted in *Pizzonia*, the question of how broad a client's interests are have to be determined by the scope of the work that the attorney did in the former representation. *Id.* This consideration interlocks with the New York Rules of Professional Conduct, in particular Rule 1.9, which governs a lawyer's responsibilities to former clients. Finally, once a substantial relationship is established between the two cases, and the same lawyer is involved in both, the moving party "is not required to make a specific showing that confidences were passed to counsel. Instead, the [moving party] is entitled to the benefit of an irrebuttable presumption that confidences were shared." *Prevezon Holdings Ltd.*, 839 F.3d at 240 (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 164-65 (E.D.N.Y. 2006)).

## Discussion

As a preface, based on the dialogue with counsel at the December 8th status conference, it is presumed that, following appropriate and independent counsel's advice to him, but without a formal *Curcio* allocution, Morris would exercise his Sixth Amendment right to have Attorney Fritz continue as his attorney of record, notwithstanding any past representation she afforded to Josephberg. Here, though, that is only half the equation. Succinctly, if Attorney Fritz did represent Josephberg, then Josephberg would need to waive any actual or potential conflicts as well. *See Pizzonia*, 415 F. Supp. 2d at 179. Josephberg's motion to disqualify Attorney Fritz

6

loudly speaks that he believes that there is an actual conflict and that, even if he could waive it, he would not. *See* ECF Dkt. No. 397 at 2.

Plainly, the first relevant factor as to disqualification, and, indeed, the most critical challenge on this motion, is whether or not Attorney Fritz actually represented Josephberg. Attorney Fritz argues that she represented Josephberg only as corporate counsel; both Josephberg and the government disagree with that representation. Attorney Fritz states, in both her memorandum of law and her affirmation, that "[a]t no point leading up to the interviews did Ms. Fritz tell Mr. Josephberg that she represented him personally. Rather, she made clear to him that she represented Halcyon and Mr. Morris – a fact that, at that point, was well known to everyone at Halcyon, including Mr. Josephberg." Dkt. No. 405 at 2; *see also* Dkt. No. 405-1 at 3, ¶ 7. Attorney Fritz also avers that she "did not solicit, and Mr. Josephberg did not disclose, any personal confidential information." Dkt. No. 405-1 at 9, ¶ 9.

In response, both Josephberg and the government point to Attorney Fritz's statements at two FINRA hearings, one on March 28, 2013, and the second, on July 30, 2013, relating to acts or omissions that are obviously part of the res gestae of this prosecution. In the first hearing, the examiner asked if she represented Josephberg, and she responded affirmatively:

Mr. Murphy: Thank you. And Ms. Fritz, do you represent the witness?

Ms. Fritz: Yes, I do.

Mr. Murphy: Do you represent the witness in his personal capacity?

Ms. Fritz: I represent him in his personal capacity in connection with this matter. Yes.

Dkt. No. 411-1 at 4:24 – 5:14 (Mar. 28, 2013 FINRA hearing).

At the second hearing, a different examiner asked if she represented Josephberg, and

Attorney Fritz initially responded that she did not. After a discussion off the record, she

confirmed that she represented Josephberg individually:

Mr. Fitzpatrick: Do you represent the witness?

Ms. Fritz: I do.

Mr. Fitzpatrick: Do you represent the witness as an individual?

Ms. Fritz: No. In his capacity as a representative and employee of Halcyon.

Mr. Fitzpatrick: Do you represent any other parties in connection with this FINRA

investigation?

Ms. Fritz: Yes. Ron Heineman, Michael Morris, Michael Segal.

Mr. Murphy: You don't represent him individually, in his individual capacity, Mr.

Josephberg?

Ms. Fritz: I don't represent Mr. Josephberg in his individual affairs. I'm here only

representing him in connection with this matter, which involves his employment at

Halcyon. Is that clear?

Mr. Choi: So you're representing Halcyon in this matter –

Ms. Fritz: No. Mr. Josephberg – I don't handle Craig's personal affairs. I don't represent

him in other matters. I'm representing him in relation to this FINRA audit and in his capacity as a representative and employee of Halcyon. If you'd suddenly go off and accuse him of murder, I'm not going to be going there with you.

Mr. Choi: Can we go off the record for a minute, Alan. (Discussion off the record).

The request for an off the record discussion regarding Attorney Fritz's representation of Josephberg punctuated its significance – due urgency, reflection, discussion, and consideration. Following such significant deliberation by Attorney Fritz, came a renewed on the record acknowledgment regarding the personal nature of her representation of Josephberg:

Mr. Choi: Back on the record. Ms. Fritz, just to clarify, you represent Mr. Josephberg in his individual capacity with respect to his roles and duties and responsibilities at the firm, correct?

Ms. Fritz: Yes.

Mr. Choi: So you do represent him in his individual capacity?

Ms. Fritz: Yes, to that extent, yes.

By Mr. Fitzpatrick: Mr. Josephberg, you understand that your attorney also represents others in this matter?

A:     Yes, sir.

Q:     Okay.

Dkt. No. 411-2 at 4:16 – 6:17. What is understandable now is that Attorney Fritz twice stated

that she represented Josephberg in his individual capacity.

Furthermore, squabbling by the parties now about Josephberg's understanding of what Attorney Fritz's role was at the time she represented him is of no real merit. Attorney Fritz's affirmation notes that she provided *Upjohn*[3] warnings to Josephberg in connection with a later investigation that she conducted related to co-defendant Abraxas DiScala's trading activities. Dkt. No. 405-1 at 4, ¶ 13. From the record, it does not appear that any such warnings were given in connection with the FINRA hearings. Attorney Fritz states that Josephberg did not share personal confidential information with her, dkt. no. 405-1 at 9, ¶ 9, while Josephberg represents through counsel that he shared *work-related* confidences with Attorney Fritz, *see* dkt. no. 397 at 1. The two statements are not inconsistent with each other, but do point to an attorney-client relationship. As such, the Court finds that Fritz represented Josephberg individually for the two FINRA hearings. *See United States v. Malpiedi*, 62 F.3d 465 (2d Cir. 1997). To the extent that Josephberg is claiming, however, that he was represented by Attorney Fritz *after* the July 2013 FINRA hearing, the Court credits Attorney Fritz's assertion that she provided him with *Upjohn* warnings, and finds that she did not represent Josephberg during her August 2013 investigation on behalf of Halcyon.

Turning to the second factor – whether there is a substantial relationship between the

---

[3] *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L.Ed.2d 584 (1981) (setting forth requirement that corporate employees be warned about corporate privilege).

subject matter of the prior representation and the instant criminal case; as previewed earlier, the Court finds that there is a substantial relationship between the FINRA hearings and this case. Here, both prongs of the substantial relationship test come into play. The current matter does involve the work Attorney Fritz performed for Josephberg, and there is a substantial risk that her representation of Morris will involve the use of information acquired in the course of representing Josephberg.

As the government observes, Josephberg's testimony "implicated both personal and corporate matters because each faced potential regulatory or criminal action, in their individual capacities, in the event that FINRA found that they had violated securities regulations or law." Dkt. No. 409 at 5. The FINRA hearings themselves dealt with Josephberg's role at Halcyon; his relationship with Morris; how Morris supervised him at Halcyon; and how he worked with clients at the firm. *Id.* at 6; *see also* Dkt. No. 411-1, 49:1-49:25, 59:1-60:25, 66:1-67:22 (selected portions of FINRA testimony). While the Court determines that Josephberg did not provide Attorney Fritz with, perhaps, his deepest darkest secrets, he certainly had to have provided her with information relevant to his employment and habits at Halcyon – which will be relevant to this prosecution. Setting aside the back and forth over whether Morris will be acting as a "shadow prosecutor," the Court agrees with the government that Morris's factual defense may likely depend on "casting Josephberg . . . in the role of [a rogue employee] who ruined his

life." Dkt. No. 405 at 6.[4]

Given that the Court has found that there is a substantial relationship between the two representations, Josephberg is entitled to the presumption "that confidences were shared." *Prevezon Holdings Ltd.*, 839 F.3d at 240. As a consequence, since Josephberg was represented by Attorney Fritz, and since he demands her undivided loyalty and will not waive the conflict, she must be disqualified from representing Morris. The Court does not make this decision lightly, as Attorney Fritz has poured two years of time and effort into her representation of Morris and Morris wants to retain the benefit of it. But Josephberg has the right to demand she honor her loyalty to him and in upholding that right, the Court also honors its independent duty to ensure that criminal trials "are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698.

## Conclusion

In line with the foregoing, Attorney Maranda E. Fritz is ordered disqualified from representing Morris in this case. Given that there is a trial date set for January 22, 2018, and the voluminous discovery in this case, the Court would be inclined to sever Morris if his attorney

---

[4] There is still another, independent, and potentially strong reason to disqualify Attorney Fritz – her supposed representation of Witness A. That claim has not yet been asserted by Witness A, and in light of Morris's position on the disqualification of Attorney Fritz, in its unripe form that claim is of lesser import at this time.

12

could not be ready for the concretely scheduled trial date, notwithstanding what it might

otherwise do on the pending severance motions.  Separately, moreover, defendant DiScala has

sought a continuance with objection so far from only the government.  As a result, the severance

of Morris's trial will await the next status conference and resolution of the continuance request

and other pending motions.

Dated: Brooklyn, New York
       December 24, 2017

/s/ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge