THOMPSON HINE

ATLANTA CLEVELAND DAYTON WASHINGTON, D.C.
CINCINNATI COLUMBUS NEW YORK

January 5, 2018

*VIA ECF*

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Abraxas J. Discala et al.*, 14 Crim. 399 (ENV)
Defendant Michael Morris's Motion for Reconsideration of the Court's December 24, 2017 Decision Disqualifying Maranda Fritz as His Counsel

Dear Judge Vitaliano:

This letter is submitted in support of the motion for reconsideration of the Court's December 24, 2017 Decision and Order disqualifying Maranda Fritz from further representation of Michael Morris in this matter (the "Disqualification Decision").[1] In that decision, the Court considered the fact that Ms. Fritz appeared as counsel for Halcyon employees in a 2012 FINRA examination and, relying in large part on the Second Circuit decision in *Prevezon,* concluded that disqualification was appropriate. As discussed below, however, this case is materially different from the circumstances in *Prevezon* in three key respects. First, unlike *Prevezon*, the prior representation here falls squarely into the category of a "multiple" or "joint" representation that occurred in the context of Ms. Fritz's preexisting and fully disclosed representation of Mr. Morris and his firm; that long standing relationship between Ms. Fritz and Mr. Morris would have precluded any expectation on the part of Halcyon employees that information that they provided would not be shared with Ms. Fritz's primary client, Mr. Morris, and thus there was no duty of loyalty that existed that would have supplanted Ms. Fritz's duties to Mr. Morris and the firm. Second, while in *Prevezon* the Court found that there was a "substantial relationship"

[1] Motions for reconsideration in criminal cases in this district are resolved according to the same principles that apply in the civil context. *In re United States for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d 294, 300-01(E.D.N.Y. 2005) (citing *United States v. RW Professional Leasing Services Corp.*, 327 F. Supp. 2d 192, 196 (E.D.N.Y. 2004); *Dellefave v. Access Temps., Inc.*, 2001 U.S. Dist. LEXIS 3165, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001); *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)); *United States v. Avellino*, 129 F. Supp. 2d 214, 217 (E.D.N.Y. 2001); *United States v. Mosquera*, 816 F. Supp. 168 (E.D.N.Y. 1993). A motion for reconsideration may be granted where the court has overlooked "(1) factual matters that were put before it on the underlying motion or (2) controlling legal authority." *United States v. Wilson*, 920 F. Supp. 2d 287, 292 (E.D.N.Y. 2012) (internal quotation marks omitted).



THOMPSON HINE LLP
ATTORNEYS AT LAW

335 Madison Avenue
12th Floor
New York, New York 10017-4611

www.ThompsonHine.com
O: 212.344.5680
F: 212.344.6101





between the two representations, here the authority confirms that the substantial relation test is "inapposite" given the joint nature of the prior representation. Further, the subject of the prior representation – firm procedures in 2011 and 2012 – is not related to the 2013 Codesmart events at issue in this case. The earlier FINRA activity would be pertinent to this case only if the Court were to grant the Government's pending motion *in limine* and permit it to reach back in time and present evidence drawn from events in years past, well before Mr. DiScala became a client of the firm and before any of the issues relating to Codesmart developed. Finally, given the fact that the Court's decision was grounded on its concerns regarding duties owed to Mr. Josephberg, we ask that the Court reconsider the critical issues of waiver and laches that arise where a litigant fails, for two years, to raise a claim of conflict. Courts readily acknowledge that disqualification motions held until the eve of trial are often interposed for strategic reasons and, whether it was Mr. Josephberg's purpose or not, his eleventh hour motion will inflict substantial hardship on Mr. Morris. For these reasons, as set forth below, we ask that the Court reconsider the Disqualification Decision, and consider alternative measures that would protect the interests of Mr. Josephberg while also permitting Ms. Fritz to continue her representation of Mr. Morris.

*<u>There is Not a Substantial Relationship Between the Prior Representation and this Case</u>*

The Court appears to have failed to apply a sufficiently strict legal standard and overlooked, critical facts and law, when it concluded that there is a "substantial relationship" between the circumstances surrounding Ms. Fritz's prior representation of Mr. Josephberg and the instant matter. Disqualification Dec. at 10-12. First, the Disqualification Decision does not appear to apply *any* standard for determining whether disqualification is appropriate, let alone the strict standard established by the Second Circuit, that a "substantial relationship" only exists "when the issues for which the initial and subsequent representation was provided are *identical*." *Pacheco Ross Architects*, 2009 U.S. Dist. LEXIS 45294 at *14 (emphasis added) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978)).

Indeed, although the Court concluded that there is a substantial relationship between the prior representation and this case, that conclusion overlooks controlling Second Circuit law. "In *Allegaert* [*v. Perot*, 565 F.2d 246 (2d Cir. 1977)], the Second Circuit created an exception to the substantial relationship test, where the prior representation by the attorney in question was within the context of a joint representation between a former, but now adverse, client and a present, longstanding, client." *Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 187 (S.D.N.Y. 2000). The *Allegaert* court held that, in instances of successive representation stemming from a joint representation, such as here, "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his





present client." *Allegaert*, 565 F.2d at 250. Because Ms. Fritz jointly and concurrently represented both Mr. Josephberg and Mr. Morris in the prior representation before FINRA, and Mr. Josephberg was unquestionably aware of her prior and lengthy relationship with Mr. Morris, "the 'substantial relationship test is *inapposite*,' as the former client [Mr. Josephberg] could not reasonably expect confidences imparted to the attorney [Ms. Fritz] during the course of the joint representation to be withheld from the other client [Mr. Morris]." *Rocchigiani*, 82 F. Supp. 2d at 187 (S.D.N.Y. 2000) (quoting *Allegaert*, 565 F.2d at 250). In other words, given the nature of Ms. Fritz's longstanding and continuous representation of Mr. Morris and Halcyon, and the joint nature of her representation of Halcyon employees before FINRA, there could be no expectation on Mr. Josephberg's part that his communications would not be shared with Mr. Morris.[2] *See id.*; *see also Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp. 2d 371, 385 (E.D.N.Y. 2008) (holding no substantial relationship where, "as in *Rocchigiani*, any representation of Cox and Holdings [the prior clients] was done with their knowledge that the Altman firm continued to represent the interests of Poyner and Minahan [the other clients]."); *see also Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 629 F. Supp. 2d 259, 263 n.3 (S.D.N.Y. 2007) ("Since Paul Weiss was jointly representing Citigroup and plaintiff in the arbitrations, plaintiff had no reasonable expectation that any information Paul Weiss learned from him would not be shared with Citigroup."); *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 310 (S.D.N.Y. 2006) (same); *accord Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 670 (N.Y. 1996) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confidential communications are not within the privilege in subsequent adverse proceedings between the co-clients.").

In any event, even if the substantial relationship test were applicable in this case, the undisputed facts make clear that there is no substantial relationship between Ms. Fritz's prior representation of Mr. Josephberg at the FINRA examination and her current representation of Mr. Morris in this case. The Disqualification Decision does not take into account the distinction between FINRA's review of 2011 and 2012 firm procedures, as opposed to the allegation here that Mr. Morris and Mr. Josephberg conspired with Mr. DiScala and deliberately engaged in securities fraud in 2013.[3] Specifically, the Court properly held that the FINRA examination dealt

[2] The Court already concluded that Ms. Fritz did not represent Mr. Josephberg after the FINRA examination. Disqualification Dec. at 10 ("To the extent that Josephberg is claiming, however, that he was represented by Attorney Fritz *after* the July 2013 FINRA hearing, the Court credits Attorney Fritz's assertion that she provided him with *Upjohn* warnings, and finds that she did not represent Josephberg during her August 2013 investigation on behalf of Halcyon.").

[3] This is an entirely separate basis supporting reconsideration, as the Disqualification Decision ignores Second Circuit precedent that motions to disqualify counsel must be supported by evidence. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983) (vacating order disqualifying counsel where disqualification rested on a dispute as





generally with "Josephberg's role at Halcyon; his relationship with Morris; how Morris supervised him at Halcyon; and how he worked with clients at the firm." Disqualification Dec. at 11. But equally clear is that the FINRA examination considered generic employment issues during a time period that entirely predates the conduct alleged in the Superseding Indictment of Mr. Morris or Mr. Josephberg.[4] And no conflict existed on the issues addressed by FINRA: the witnesses provided generally consistent information concerning firm procedures, and even now there is no conflict or dispute concerning those matters: Mr. Josephberg confirmed, and Mr. Morris agrees, that there was not an issue relating to Mr. Josephberg's conduct **prior to the actions of Mr. DiScala in or about August 2013**.

In fact, the only way the issues present in the FINRA representation even would arise in this matter is if the Government were permitted to introduce those "prior acts," as it seeks to do in its pending motion *in limine*. *See* Dkt. No. 399. The Government, by dint of their motion to be permitted to inject those circumstances relating to the earlier FINRA exam, effectively concedes that those circumstances are not an actual part of this case. And despite the fact that the Government argues that this unrelated, pre-Indictment conduct is "direct evidence" of the Codesmart scheme, it is clear that what occurred at Halcyon in 2012 and earlier does not and cannot establish what was happening at the firm in the summer of 2013. Recognizing this flaw, the Government argues that the FINRA evidence should be admitted under Federal Rule of Criminal Procedure 404(b) as "prior acts." But as we have argued in response to that motion, the issues of the FINRA examination, including Mr. Morris's supervision of Mr. Josephberg in the 2011 and 2012 period, are not probative of any claim of securities fraud in 2013. This evidence should not be admitted at trial, particularly under the circumstances where it is being used to support a delayed disqualification application by the Government, and in the event that the Court

to whether the firm acted as counsel to individuals and record contained "no affidavit or testimony" from the former client regarding "the nature of the relationship").

[4] At the outset of Mr. Josephberg's interviews, the FINRA examiner stated: "We're here today to interview Craig Josephberg in connection with FINRA's *2012* cycle examination concerning Halcyon Cabot Partners." FINRA OTR Testimony of C. Josephberg, July 30, 2013, 3:13-15 (emphasis added). The FINRA transcripts are replete with references making clear that the FINRA examination focused on conduct that occurred in 2012 *or earlier*. *See, e.g.*, FINRA OTR Testimony of C. Josephberg, March 28, 2013, 51:21-24 ("[G]enerally, for last two years while you have been at Halcyon, what has been your total compensation? Starting in . . 2012 and 2011, sorry."); *id.* at 52:23-25 ("And typically, a year, say in 2010, what would be your expenses be related to your work at Halcyon?"); *id.* at 84:5-85:9 (discussing a loan and related transactions occurring in May and June 2012); FINRA OTR Testimony of C. Josephberg, July 30, 2013, 33:20-22 (discussing email chain dating March 27, 2012); *id.* at 109:9-11 ("Exhibit Number 19 is an email from Gary Farless to you, Mr. Josephberg, sent Sunday, January 29th, 2012, subject account."); *id.* at 116:10-13 ("I ask the reporter to mark as Exhibit 21 a four-page document. The document contains an email from Art Rosen to Craig Josephberg dated April 24, 2012.").





denies the Government's *in limine* motion, there is clearly no substantial relationship between the present case and the prior representation.[5]

In the end, this case is readily distinguishable from the decision in *United States v. Prevezon Holdings Ltd.*, in which the Second Circuit determined that a substantial relationship existed. 839 F.3d 227, 239-40 (2d Cir. 2016). In *Prevezon*, a law firm previously had represented a client individually in connection with a fraud investigation; the prior client moved to intervene in a separate, later civil forfeiture and money laundering action arising out of that same fraud, and to disqualify that law firm from representing the defendant, a new client of the law firm. *See id.* 229-234. In reversing the district court and concluding that disqualification was proper, the *Prevezon* court found that a substantial relationship existed because the same fraud was at issue in both matters, and that the law firm's investigation of that fraud for its former client was "an essential element" of the Government's case against the new client. *Id.* at 239-40. This analysis stands in stark contrast to that contained in the Disqualification Decision – as noted above, there is no factual basis to conclude that FINRA examination and the instant case involve the same issues. Nor can it be argued that the FINRA examination constitutes an "essential element" of the charges brought by the Government in this case. For this reason alone, reconsideration is appropriate.

Additionally, in light of the Court's reliance on obligations owed to Mr. Josephberg, there remains a substantial issue of prejudice and waiver. Authorities confirm that disqualifications motions may be denied where delay is coupled with substantial prejudice to the client. "In a case of extreme delay in moving for disqualification, where the circumstances are extraordinary, a motion to disqualify may be denied based upon laches." *Schwed v. GE*, 990 F. Supp. 113, 117 (N.D.N.Y. 1998) (citing *Emle Indus., Inc. v. Patentex Inc.*, 478 F.2d 562, 574 (2d Cir. 1973)). Here, the Disqualification Decision fails to address the issue of Mr. Josephberg's two year delay in raising the issue. His counsel asserts that "it was not until counsel received indisputable evidence that Ms. Fritz represented Mr. Josephberg personally and individually on two separate occasions, and then saw the overlap between that testimony and Ms. Fritz's defense theory, that counsel realized the extent of the conflict and that it was not waivable." Dkt. No. 411 at 5 n.3. But that contention ignores the fact that *Mr. Josephberg* was aware of Ms. Fritz's prior representation of him, and surely discussed that issue with his counsel more than two years ago when Ms. Fritz first entered her appearance in the case. In sum, there is no reason offered for the delay other than an effort to damage Mr. Morris or seize some perceived trial advantage.

---

[5] At a minimum, the motion for disqualification should not be decided before the Court issues its decision with respect to the Government's *in limine* motion.





The prejudice to Mr. Morris, on the other hand, is palpable. Ms. Fritz stated in her declaration in opposition to disqualification that she has established a long-standing relationship with Mr. Morris, and that she has been diligently involved in this case since he was added to the Superseding Indictment over two years ago. Moreover, as the Court is well aware, there is a substantial amount of discovery and documents in this case, even relative to a typical white collar matter, and the Government continues to produce volumes of documents in the past few weeks, which has led to some of the other defendants in this case seeking a last-minute continuance of the upcoming trial.

The reasoning underlying the decision in *Brown & Williamson Tobacco Corp. v. Pataki*, in which the court declined to grant a disqualification motion, is on all fours:

> It would be extremely difficult for Brown & Williamson to find new counsel on short notice who could become sufficiently acquainted with Brown Williamson's direct sales program, the expert and fact witnesses, and the various legislative and legal issues concerning the sale of cigarettes through non-brick-and-mortar outlets in time to provide effective representation in the preliminary injunction proceeding.

152 F. Supp. 2d 276, 289 (S.D.N.Y. 2001). Other courts have reached similar conclusions. *See, e.g.*, *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Disqualification at this stage would prejudice defendants in that they would be forced either to find and educate new counsel for an important trial that now is less than two months away or seek an adjournment and thus perhaps prolong the duration of the preliminary injunction."). Other courts have denied motions for disqualification where it the moving party had knowledge of the basis for such a motion for several years but failed to act. *See, e.g.*, *United States v. Newman*, 534 F. Supp. 1113, 1127 (S.D.N.Y. 1982) (relying on laches to bar disqualification where there was a two year delay in bringing the motion); *see also Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir. 1983) (denying disqualification where moving party had known of possible conflict two years and six months prior to filing disqualification motion). Finally, courts have also denied motions for disqualification filed on the eve of trial where it appeared that they were done for dilatory or strategic reasons. *Baird v. Hilton Hotel Corp.*, 771 F. Supp. 24, 28 (E.D.N.Y. 1991) (holding that the application of the laches doctrine appropriate where disqualification motion was inspired by dilatory tactics); *see also Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) (denying disqualification motion filed on eve of trial where moving party could not explain delay, finding that the party was engaging in impermissible trial tactics). The Disqualification Decision does not address this precedent, nor does it take into account the substantial prejudice that disqualification of Ms. Fritz will cause Mr. Morris.





In light of the substantial prejudice that would be inflicted on Mr. Morris by Ms. Fritz's disqualification, we also ask that the Court consider other less drastic remedies that would protect both Mr. Josephberg's and Mr. Morris's interests. Because there is "a presumption in favor of counsel of choice," *Wheat v. United States*, 486 U.S. 153, 164 (1988), and "the choice of counsel should not be unnecessarily obstructed by the court, *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003), a court should consider whether disqualification may be obviated by imposing a less drastic remedy. *See also Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("[C]ourts should be quite hesitant to disqualify an attorney."). Most importantly, the Court should take into account that severing Mr. Morris from the other defendants would minimize, if not eliminate, Mr. Josephberg's concerns and any other "trial taint" that might arise in a joint trial. Severance of Mr. Morris would lessen the chance that any defense of Mr. Morris negatively implicating Mr. Josephberg would arise in a manner that would interfere with Ms. Fritz's duty of loyalty to him. For these additional reasons, reconsideration is proper.

There are other less drastic remedies that are available. For example, *if* the Court grants the Government's motion and admits evidence concerning the earlier FINRA examination, the Court could at the same time preclude Ms. Fritz engaging in any argument or cross-examination that in any way impugns Mr. Josephberg's conduct during that period or his FINRA testimony. Alternatively, the Court could also preclude any reference to or use of any communications with Mr. Josephberg that occurred in relation to that FINRA examination. Further, if Mr. Josephberg actually asserts that he imparted any confidential information to Ms. Fritz, use of that could obviously be precluded. Through such options, the Court could mitigate Mr. Josephberg's concerns while protecting Mr. Morris's interest in continuing with Ms. Fritz as counsel.

*Conclusion*

For the foregoing reasons, the undersigned respectfully requests that the Court reconsider the Disqualification Decision, and permit Mr. Morris to continue to have Ms. Fritz as his counsel.

Respectfully,

s/ Brian K. Steinwascher

Brian K. Steinwascher