

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:SCJ
F. #2013R01203

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 8, 2018

By Hand and ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Discala, et al.
     Criminal Docket No. 14-399 (ENV) (S-1)

Dear Judge Vitaliano:

  The government writes to respond to defendant Michael Morris's letter motion filed January 5, 2018 (ECF No. 432 "Morris Ltr."), requesting that the Court reconsider its order disqualifying Maranda Fritz from acting as Morris's attorney due to a conflict of interest with co-defendant Craig Jospehberg. ECF No. 423. For the reasons set forth below, the government respectfully requests the Court deny the motion for reconsideration.

  A. Disqualification was Appropriate

  A motion to disqualify an attorney is within the broad discretion of the court. Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir.), judgment vacated on other grounds, 450 U.S. 903 (1981) (noting that a court's ruling will not be overturned absent an abuse of discretion determination). As Your Honor previously noted, federal courts have an independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." ECF No. 423 at 3 (citing United States v. Wheat, 486 U.S. 153, 158 (1988)). Disqualification may arise from duties of loyalty owed to former clients.[1] Id. at 5.

---

[1] New York has adopted the Model Rules of Professional Conduct. Model Rule 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.9.

Here, the Court found that Ms. Fritz previously represented Josephberg in an individual capacity before the Financial Industry Regulatory Authority ("FINRA")( ECF No. 423 at 10), and that matter was substantially related to the instant case. Id. at 11-12. Due to her prior representation, Ms. Fritz owes competing duties of loyalty to both Morris and Josephberg, regardless of whether their trials are severed. In addition, Ms. Fritz owes a continuing duty of loyalty to the other Halcyon employees Ms. Fritz represented before FINRA, including an anticipated government trial witness, "Witness A." If Ms. Fritz is permitted to continue as counsel, she will have to cross-examine her former client, Witness A. To the extent Witness A provides inculpatory testimony against Morris, which the government anticipates she will, Ms. Fritz either will have to violate the continuing duty of loyalty owed to Witness A to try to show that Witness A is not credible, or, in the alternative, not fulfill her current duties to Morris. Furthermore, in support of Morris's motion to sever his trial from Josephberg's, Ms. Fritz has made arguments regarding the relative culpability of Morris and Josephberg, and it is expected that those arguments will be repeated during the course of Ms. Fritz's representation of Morris. See ECF No. 350 at 15-17 (Morris Severance Mem.), ECF No. 391 at 10-11 (Morris Severance Reply Mem.). Josephberg may be prejudiced at sentencing due to the arguments raised by Ms. Fritz on behalf of Morris.

Morris also will be prejudiced if Ms. Fritz cannot vigorously defend Morris at trial due to the duties she owes to her former clients. If Ms. Fritz is permitted to continue as counsel, and Morris is convicted after a trial, he will likely argue, either on appeal or in a 2255 motion, that Ms. Fritz's conflicts resulted in him receiving ineffective assistance of counsel.

B.  The Substantial Relationship Standard

Morris argues that the Court misapplied the substantial relationship standard in disqualifying Ms. Fritz because, Morris claims, the standard only applies in disqualification cases where the prior and current representation are *identical.* Morris. Ltr. at 2 (emphasis in the original). This is not correct. What is required is that the representation must involve similar issues. For example, even in the 1978 civil case cited by Morris for this proposition, Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 740 (2d Cir. 1978), the Second Circuit affirmed the disqualification of counsel where the prior representation and the current representation involved a similar issue involving the same defendant, but the lawsuits were not identical as a matter of fact. In Cook, the disqualified attorney previously represented the defendant in related breach of contract cases where shipments of soybeans from Louisiana to Taiwan were found to be less than the amount stated on the bills of lading and weight certificates. The soybean cases were dismissed after the defendant challenged the validity of certain documents and argued that any shortage was due to a third party carrier. In the later action, the disqualified attorney attempted to represent a different plaintiff in another breach of contract action against the same defendant where grain delivered to India differed from the amounts stated on the weight certificates. The cases had distinct sets of plaintiffs, separate contracts, different types of goods, different destinations, but involved a similar issue, i.e., whether the shortage of goods was the fault of the defendant or some other bad actor. As a result, the cases were similar enough that disqualification was deemed appropriate. Other courts have noted that disqualification may be appropriate when the two matters are merely similar when "disqualification is predicated on the extensiveness of the attorney's exposure during the prior representation to particular practices

that are similar to those underlying the subsequent litigation." Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 804 (S.D.N.Y.1991). See also United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459–60 (S.D.N.Y.1985). Here, as described in more detail below, and as the Court already found, there is a substantial relationship between the prior representation and the current matter.

Morris also argues the substantial relationship test does not apply here, because "[i]n Allegaert v. Perot, 565 F.2d 246 (2d Cir, 1977), the Second Circuit created an exception to the substantial relationship test, where the prior relationship by the attorney in question was within the context of a joint representation between a former, but not adverse, client and a present, long standing client." Morris Ltr. at 2 (quoting Rocchigiani v. World Boxing Counsel, 82 F. Supp. 2d 182, 187 (S.D.N.Y. 2000)). However, as noted in another case cited by Morris, the Allegaert rule applies in situations "where a partnership, joint venture or other cooperative effort breaks up, or where two former co-parties to a litigation sue each other." Pacheco Ross Architects, P.C. v. Mitchell Associates Architects, 08 Civ. 466 (GTS/RFT), 2009 WL 1514482, (N.D.N.Y. 2009) (quoting United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1453 n. 7 (S.D.N.Y.1985)). Those contexts, where there was a mutual decision to use the same counsel to represent a joint venture, which later broke down, are different from here, where Halcyon, as the employer, provided retained counsel to employees whose testimony was taken by FINRA as part of a regulatory inquiry. While it is clear that Ms. Fritz represented multiple individuals before FINRA, as well as Halcyon, there was no joint venture that she represented that included Morris, Josephberg and Witness A. Each was represented by Ms. Fritz before FINRA in their individual capacity.

Also, all of the cases cited above are civil cases, unlike the instant criminal case. Here, Josephberg obtains no strategic advantage at trial by disqualifying Morris's counsel. Josephberg's concerns are rooted in obtaining a fair trial and, if convicted, a proportionate sentence. The government also obtains no strategic advantage from disqualification. In fact, Ms. Fritz's disqualification could result in Morris prevailing in his motion to sever his trial from the co-defendants, an outcome the government had wanted to avoid. However, the Court has an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. Wheat, 486 U.S. 153, 161.

C. The FINRA OTRs Relate to the Instant Case

Morris argues that, even if the substantial relationship test were applicable, there is no substantial relationship between Ms. Fritz's prior representation of Josephberg at the FINRA examinations and her current representation of Morris in this case. The government disagrees. It is simply not accurate to contend that there is no "issue relating to Mr. Josephberg's conduct **prior to the actions of Mr. Discala in or about August 2013**." Morris Ltr. at 4 (emphasis in the original). The government has alleged in the Superseding Indictment that Josephberg and Morris began to participate in the CodeSmart stock manipulation scheme by at least May 2013, S-1 Ind. ¶ 21. In its pending 404(b) Motion, the government has also argued that Josephberg and Morris had engaged in prior fraudulent activity together. ECF No. 399. In any event, regardless of the Court's determination on the government's pending 404(b) motion, it is the government's position that the witnesses, when previously represented by Ms. Fritz,

3

were not truthful when they made certain assertions before FINRA and the SEC that indicated Josephberg was not acting in violation of securities regulations and laws.

During two different OTRs, on March 28, 2013, and July 13, 2013, Josephberg testified for approximately 12 hours about a wide variety of matters, including, among other things, his penny stock certificate business, his understanding of how a pump and dump worked, how he obtained clients, how he communicated with clients and his working relationships with Morris and Witness A.[2] As one example, when Josephberg was asked about Halcyon's "average price account," which was Halcyon's inventory account where a trade could be executed before being allocated to a respective client, Josephberg claimed that he would have to call one of Halcyon's traders to use that account and "I don't have access to that." 3/28/2013 Josephberg OTR at 70. The government anticipates that Witness A will testify, among other things, that she had access to Halcyon's average price account, and Josephberg used the average price account regularly to place unauthorized trades in customer accounts, including trades in CodeSmart. Josephberg told FINRA that he did not trade in the account of clients if he was not their registered representative. Id. at 189. Also, Josephberg stated that he did not share clients or commissions with Witness A and was not responsible for any part of Witness A's compensation. Id. at 144, 7/13/2013 Josephberg OTR at 29. Witness A testified similarly during her OTR. 9/17/13 OTR at 27. On February 27, 2015, Morris also testified that Witness A handled her own clients. Morris 2/27/15 SEC OTR at 136. The government anticipates that Witness A will testify that clients of Josephberg's were placed under her name if he was not registered in a particular state, but Josephberg directed the trading in those accounts. Witness A is also expected to testify that she believed Morris was aware if this arrangement.

Furthermore, it is is likely that Ms. Fritz was aware that Witness A and Morris both previously testified in a misleading fashion about how Witness A met Morris. For example, when Morris was asked how he met Witness A, he said he met her "casually," and that they socialized "a little bit" outside of Halcyon. Morris 2/27/15 SEC OTR at 136. Witness A stated, "I met Michael Morris through mutual friends. I had friends that worked in finance who knew him." 9/17/13 OTR at 16. How Witness A met Morris is discussed in the government's pending 404(b) motion. See ECF No. 399. Morris had a "long-standing" attorney-client relationship with Ms. Fritz (Morris Ltr. at 6), and, according to Witness A, Morris introduced Witness A to Ms. Fritz prior to Witness A becoming employed at Halcyon.

---

[2] Witness A testified for approximately two hours on September 17, 2013.

<u>Conclusion</u>

        For the reasons set forth above, the government requests that the Court deny Morris's motion for reconsideration. However, if the Court is considering reversing its prior decision, the government respectfully requests that the Court hold a <u>Curcio</u> hearing with Morris to ensure he understands the constraints that may be imposed on Ms. Fritz if she represents him at any trial.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:    /s/
        Shannon C. Jones
        Patrick T. Hein
        Mark E. Bini
        Assistant U.S. Attorneys
        (718) 254-6379 (Jones)

cc: All counsel (by ECF)